UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
KRYSTALIE M.P.,

                                Plaintiff,          DECISION AND ORDER
                                                              1:21-CV-07902-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
-------------------------------------------------------

GARY R. JONES, United States Magistrate Judge:

      In February of 2016 and November of 2019, Plaintiff Krystalie M.P.[1] applied for Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by the Urban Justice Center, Ann Pegg Biddle, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 14).

      This case was referred to the undersigned on August 18, 2022. Presently pending are the parties' Motions for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 19, 23). For the following reasons, Plaintiff's motion is granted, the Commissioner's motion is denied, and this case is remanded for further proceedings.

## I.  BACKGROUND

### A.  *Administrative Proceedings*

Plaintiff applied for benefits on February 22, 2016, alleging disability beginning January 1, 2016. (T at 301-310).[2] The application was denied initially and on reconsideration.  Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ").  (T at 216-232). On June 22, 2018, ALJ Aaron M. Morgan issued a decision denying the application for benefits. (T at 7-26).  The Appeals Council denied Plaintiff's request for review on April 18, 2019. (T at 1-6).  On May 14, 2019, Plaintiff, through counsel, filed an action in federal court challenging the denial of benefits. On October 30, 2019, the case was remanded by stipulation of the parties for further proceedings. (Docket No. 13 in Case Number 7:19-cv-04371-NSR-LMS).

Plaintiff reapplied for benefits on November 26, 2019. This application was also denied initially and on reconsideration. (T at 655-71).  On May 14,

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 12

2020, the Appeals Council, acting on the remand stipulation, vacated ALJ Morgan's decision denying the 2016 application, consolidated Plaintiff's 2016 and 2019 applications, and remanded the consolidated application to the ALJ for a hearing and decision. (T at 672-77).

A hearing was held on December 11, 2020, before ALJ John Carlton. (T at 602). Plaintiff appeared with an attorney and testified. (T at 611-38). The ALJ also received testimony from Peter Manzi, a vocational expert. (T at 639-45).

B.   *ALJ's Decision*

On May 24, 2021, ALJ Carlton issued a decision denying the consolidated applications for benefits. (T at 580-601). He found that Plaintiff had not engaged in substantial gainful activity since February 22, 2016, the date she initially applied for benefits. (T at 585). The ALJ concluded that Plaintiff's asthma; intellectual disorder; attention deficit hyperactivity disorder; depressive disorder; and anxiety disorder were severe impairments as defined under the Act. (T at 586).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 586).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: she must work indoors in a temperature-controlled environment with no exposure to excessive gases, fumes, dust, pollen, cold, heat, humidity, or other pulmonary irritants; she would be able to work in what one typically expects in an office environment; but she is limited to simple, routine work not done at a production rate pace, and can interact with, and react appropriately with, supervisors and co-workers on an occasional basis. (T at 588). The ALJ further found that Plaintiff was limited to no more than superficial interactions with the general public and restricted to jobs at "level one" reasoning, math, and language. (T at 588).

The ALJ determined that Plaintiff had no past relevant work. (T at 594). Considering Plaintiff's age (19 on the initial application date), education (limited), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 594). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between February 22, 2016 (the initial application date) and May 24, 2021 (the date

of the ALJ's decision). (T at 595).  ALJ Carlton's decision is considered the Commissioner's final decision.

    C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on September 22, 2021. (Docket No. 1).  On April 22, 2022, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 19, 20).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on July 21, 2022. (Docket No. 23, 24).  On August 18, 2022, Plaintiff submitted a reply memorandum of law in further support of her motion and in opposition to the Commissioner's motion. (Docket No. 25).  The Commissioner filed a reply memorandum of law on September 2, 2022. (Docket No. 29).

## II.  APPLICABLE LAW

    A.    *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B. *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See *Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for reversal of the ALJ's decision.  First, she challenges the ALJ's consideration of her school records.  Second, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed.  This Court will address both arguments in turn.

A.  *Assessment of Social Records*

When evaluating benefit applications from "young adults" (defined as people between the ages of 18 and 25), the ALJ considers non-medical

sources of evidence, including school records. *See* SSR 11-2p; *Coppola v. Berryhill*, No. 18 CIV. 599 (HBP), 2019 WL 1292848, at *20 (S.D.N.Y. Mar. 21, 2019); *Eckert v. Comm'r of Soc. Sec.*, No. 19-CV-0763(JS), 2019 WL 6307353, at *6 (E.D.N.Y. Nov. 25, 2019).

In the present case, Plaintiff's school records document several disability-related accommodations, including extended time for tests, testing in a separate location, and the need to have questions and directions read. (T at 152-53, 169, 183, 197, 214).  Plaintiff argues that these accommodations are evidence of work-related limitations inconsistent with the ALJ's RFC determination.

The ALJ, however, considered Plaintiff's school records, including her challenges and need for special education supports, services, and accommodations. (T at 589).  The ALJ incorporated work-related limitations consistent with those challenges, including a restriction to work involving very basic reasoning, math, and language; limitation to work that is simple and routine and without production-rate pressure, and only involving occasional interaction with co-workers. (T at 588).  The ALJ also referenced school records describing Plaintiff as "posess[ing] all daily living skills necessary," demonstrating "basic comprehension of tasks that involve one and two step directions," "generally complet[ing] all homework

assignments," and working at a preschool program available through her school. (T at 589, 883).

This Court therefore concludes that the ALJ's consideration of Plaintiff's school records is supported by substantial evidence. The fact that Plaintiff offers an alternative, more restrictive reading of her school records does not justify reversal under the deferential standard of review applicable here. *See, e.g., Eckert*, 2019 WL 6307353, at *6; *Frankie M. v. Comm'r of Soc. Sec.*, No. 20-CV-529-LJV, 2022 WL 282814, at *4 (W.D.N.Y. Jan. 31, 2022); *see generally McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.")(citation omitted). The Court finds no reversible error with respect to this aspect of the ALJ's decision.

### B.   Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).  The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's

11

supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Dr. Howard Tedoff performed a consultative intelligence evaluation in September of 2017. He rated Plaintiff's full-scale IQ at 55 and described her intellectual functioning as in the "mild to moderate range of intellectual deficiency." (T at 561). Plaintiff presented as cooperative and demonstrated "adequate" social skills. (T at 561). Dr. Tedoff found Plaintiff's ability to think, reason, and problem-solve "significantly impaired." (T at 562).

Dr. Tedoff opined that Plaintiff had mild limitation with respect to understanding, remembering, and applying simple directions; moderate to marked difficulty regarding complex directions; less than age-appropriate ability to interact with others; marked limitation in sustaining concentration and performing a task at a consistent pace; no significant inability to sustain an ordinary routine under supervisions; and moderate limitation in the ability to maintain regular attendance. (T at 562). Dr. Tedoff concluded that

Plaintiff's cognitive problems were "significant enough to render her unable at this time to engage in substantial gainful activity." (T at 563). He described Plaintiff's prognosis for obtaining and maintaining gainful employment as "at best guarded, most likely poor." (T at 563).

In January of 2020, Dr. Alexandra Gordon-Fitzsimons performed a consultative psychiatric evaluation. Plaintiff presented with appropriate affect and orientation, but with impaired attention, concentration, and memory. (T at 1453-54). Dr. Fitzsimons described Plaintiff's intellectual functioning as "borderline," with fair insight and judgment. (T at 1454).

Dr. Fitzsimons opined that Plaintiff had mild limitation with respect to understanding, remembering, or applying simple directions and instructions and moderate limitation regarding complex directions and instructions. (T at 1454). She assessed moderate to marked limitation in Plaintiff's ability to interact adequately with supervisors, co-workers, and the public; sustain concentration and perform at a consistent pace; regulate her emotions and control her behavior. (T at 1455).

Dr. Fitzsimons believed that Plaintiff had moderate to marked limitation in her ability to sustain an ordinary routine and regular attendance at work. (T at 1455). She characterized Plaintiff's prognosis as "guarded"

and opined that her psychiatric and cognitive problems "may significantly interfere with [her] ability to function on a daily basis." (T at 1455).

The ALJ afforded "partial" weight to the opinions of Dr. Tedoff and Dr. Fitzsimons. (T at 593).  For the following reasons, the Court concludes that the ALJ's analysis was inadequate and not supported by substantial evidence.

As a threshold matter, it is not clear which legal standard the ALJ applied for weighing the medical opinion evidence.  As noted above, the Commissioner's revised regulations regarding medical opinion evidence apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Plaintiff's first application was filed in February of 2016, before that effective date; her second application was filed in November of 2019, after the regulations went into effect.  The ALJ's decision to afford "weight" to the various medical opinions indicates that he applied the "old" standard.[3] (If the ALJ had applied the new standard, he would have spoken in terms of the "persuasiveness" of the opinions).  This issue, however, is not dispositive, as the Court finds the ALJ's analysis insufficient under either standard.  On remand, however, the ALJ should be clear as to which standard is being applied.

---

[3] *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)

This Court finds the ALJ erred in addressing the evidence regarding Plaintiff's ability to maintain regular work attendance. Dr. Tedoff opined that Plaintiff's ability to maintain regular attendance at work was "of at least moderate impairment." (T at 567). This finding appeared to be an important part of Dr. Tedoff's conclusion that Plaintiff's prospects for obtaining and sustaining gainful employment were "at best guarded, most likely poor." (T at 568). Dr. Fitzsimons assessed "moderate to marked" limitation in Plaintiff's ability to sustain regular attendance at work. (T at 1455).

The consistency of these two assessments is significant, particularly in light of Plaintiff's documented problems sustaining a schedule. She dropped out of school after the ninth grade due to excessive absences. (T at 899, 911, 914). Plaintiff has struggled to maintain attendance at medical appointments, including mental health treatment appointments, and was discharged from at least one mental health program because of missed appointments. (T at 436, 590, 1162, 1163, 1165, 1167, 1170, 1174, 1178, 1179, 1180, 1181, 1202, 1205).

The ALJ recognized Plaintiff's difficulties maintaining attendance, both in school and in her mental health treatment (T at 589-90), but then failed to address the significant consistency between this evidence and the

opinions of Dr. Tedoff and Dr. Fitzsimons (which are, in turn and importantly, consistent with each other). The ALJ discounted the consultative examiners' opinions based primarily on the fact that the treatment records generally described her as making periodic progress without overt exacerbation of her psychiatric symptoms. (T at 593).

Notably, this ignores Plaintiff's documented difficulty attending those appointments. Moreover, the ALJ took no apparent account of the Commissioner's regulations recognizing that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

In other words, Plaintiff's ability to be appropriate during appointments with supportive medical professionals, *when she was actually able to attend*, is of some probative value when assessing the medical opinion evidence. However, the ALJ placed undue emphasis on this aspect of the record, without explaining how he reconciled this evidence with the shared assessment of significant limitation from two consultative examiners, supported by well-documented difficulties regarding the ability to sustain a schedule.

The Court is mindful that the record contains some support for the ALJ's decision. Dr. Ruby Phillips performed a consultative psychiatric evaluation in April of 2016 and found, *inter alia*, no evidence of limitation in Plaintiff's ability to maintain a regular schedule. (T at 519). Non-examining state Agency review physicians concluded that Plaintiff had moderate limitation in this domain, but nevertheless retained the ability to meet the basic mental demands of unskilled work on a sustained basis provided she had limited contact with the public. (T at 236, 243, 669, 692).

The ALJ gave "great weight" to Dr. Phillips' opinion and "significant weight" to the State Agency review physicians' assessments. (T at 592). However, non-examining physician opinions do not, without more, constitute substantial evidence. *See Vargas v. Sullivan*, 898 F.2d 293, 295

17

(2d Cir. 1990). Further, the ALJ gave greater weight to these assessments based on his reading of the treatment record. As discussed above the ALJ did not address the fact that Plaintiff's inability to consistently attend her appointments was more supportive of, and consistent with, the more restrictive limitations assessed by Dr. Tedoff and Dr. Fitzsimons. If the ALJ had offered a rationale supported by substantial evidence for why he gave greater weight to the less restrictive assessments, the Court would be obliged to defer to it, but no such rationale is contained in the decision.

Moreover, Dr. Phillips recognized moderate impairment in Plaintiff's ability to appropriately deal with stress and stated that Plaintiff's psychiatric and cognitive problems "may significantly interfere with [her] ability to function on a daily basis." (T at 519-20). Dr. Phillips also characterized Plaintiff's prognosis as "fair given adequate services" (T at 520); the subsequent history indicated that Plaintiff's ability to access adequate services was negatively impacted by her difficulty sustaining a schedule.

The ALJ's failure to recognize and address these important issues on a matter material to the disability determination requires remand.

C.   Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with

18

or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

The Court is mindful that Plaintiff's initial application for benefits has been pending for more than six (6) years and this matter has already been remanded by this court once. As such, this Court directs that proceedings before the ALJ be completed with 120 days of the date of this decision. If the decision is a denial of benefits, then a final decision shall be rendered within 60 days of any appeal by Plaintiff. *See Martinez v. Saul*, No. 19-CV-6515 (BCM), 2021 WL 2588783, at *11 (S.D.N.Y. June 23, 2021). In addition, the Court finds that this is the rare case in which assignment to a different ALJ on remand should be directed. See Lebron v. Colvin, No. 13CV9140, 2015 WL 1223868, at *25 (S.D.N.Y. Mar. 16, 2015)

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 19) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 23) is DENIED; and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment consistent with this decision and then close the file.


Dated: October 18, 2022         *s/ Gary R. Jones*
                                GARY R. JONES
                                United States Magistrate Judge